UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

|  |  |
|---|---|
| PRUDENTIAL ANNUITIES LIFE ASSURANCE CORPORATION,<br><br>Plaintiff,<br>v.<br><br>THE ESTATE OF WAYNE L. ADAMS, by and through its Executor, MELINDA MEYER et al.,<br><br>Defendants. | Civil Action No.<br><br>2:18-CV-11412-MCA-SCM<br><br>**OPINION AND ORDER ON MOTION TO TRANSFER**<br><br>**[D.E. 14]** |

**STEVEN C. MANNION**, United States Magistrate Judge.

Before this Court is Defendant Lily S. Adams's ("Ms. Adams") motion to transfer to the Eastern District of Louisiana.[1] Defendant the Estate of Wayne L. Adams (the "Estate") and Plaintiff Prudential Annuities Life Assurance Corp. ("Prudential") opposed the motion,[2] and Ms. Adams replied.[3] The Honorable Madeline Cox Arleo, U.S.D.J., referred the motion to the undersigned for disposition.[4] Upon consideration of the parties' submissions and oral argument on January 25, 2019, and for the reasons stated below, the motion to transfer is **DENIED**.

---

[1] (ECF Docket Entry No. ("D.E.") 14, Def. Adams's Mot.). The Court will refer to documents by their docket entry number and the page numbers assigned by the Electronic Case Filing System.

[2] (D.E. 18, Def. Estate's Opp'n; D.E. 19, Pl.'s Opp'n and Cross-Mot.).

[3] (D.E. 23, Def. Adams's Reply).

[4] L. Civ. R. 72.1(a)(1).

# I. BACKGROUND AND PROCEDURAL HISTORY[5]

This case involves an interpleader action filed by Prudential to determine the proper recipient of Prudential Variable Annuity Contract Number E0357146 (the "Annuity").[6] A consent order for the deposit of funds, interpleader relief, and discharge and dismissal of Prudential was entered post-oral argument on February 1, 2019.[7]

Ms. Adams and decedent, Wayne L. Adams ("Mr. Adams"), married in 1986 and resided in Louisiana.[8] In 2005, Prudential issued the Annuity to Mr. Adams, naming Ms. Adams as the beneficiary.[9] In 2010, Mr. Adams relocated to New Jersey.[10] In May 2011, Mr. Adams and Ms. Adams entered into a consent judgment ("2011 Consent Judgment") regarding some matters in their divorce proceedings.[11] In March 2016, they entered into a domestic relations order ("DRO") that divided the Annuity in equal halves between them and provided that Ms. Adams "waives any and all interest in the remaining one-half (1/2) interest."[12] On the same day, they entered into a consent judgment of partial partition of community property ("Partial Partition Consent Judgment") that expressly incorporated the DRO.[13] In April 2016, Mr. Adams and Ms. Adams

---

[5] The allegations set forth within the pleadings and motion record are relied upon for purposes of this motion only. The Court has made no findings as to the veracity of the parties' allegations.

[6] (D.E. 1, Compl., at ¶¶ 4, 6).

[7] (D.E. 33, Consent Order).

[8] (D.E. 22, Decl. of Lily S. Adams, at ¶ 1).

[9] (*Id.* at ¶ 2).

[10] (D.E. 18-1, Cert. of Melinda Meyer, at ¶ 5).

[11] (D.E. 23, Def. Adams's Reply Br., Ex. B).

[12] (*Id.*, Ex. C, at ¶ 7.B).

[13] (*Id.*, Ex. C)

divorced by way of judgment of divorce signed in the Civil District Court for the Parish of Orleans in Louisiana.[14] In May 2016, Prudential received a Notification of Divorce and Division Instructions whereby Mr. Adams and Ms. Adams requested that fifty-percent (50%) of the Annuity be transferred to another insurance carrier.[15]

Mr. Adams died in November 2016,[16] resulting in a death benefit ("Death Benefit") becoming due under the Annuity.[17] At the time of Mr. Adams's death, Ms. Adams remained the beneficiary of record for the Annuity.[18] In August 2017, Melinda Meyer ("Ms. Meyer"), the Executor of the Estate and companion to Mr. Adams prior to his death,[19] made a claim with Prudential to the Death Benefit on behalf of the Estate.[20]

## II. **MAGISTRATE JUDGE AUTHORITY**

Magistrate judges are authorized to decide any non-dispositive motion designated by the Court.[21] This District specifies that magistrate judges may determine all non-dispositive pre-trial motions which include motions to transfer.[22] Decisions by magistrate judges must be upheld unless

---

[14] (D.E. 22, Decl. of Lily S. Adams, at ¶ 9; D.E., 19, Pl.'s Opp'n and Cross-Mot., Ex. G).

[15] (D.E. 1, Compl., Ex. B).

[16] (*Id.*, Ex. C).

[17] (D.E. 1, Compl., at ¶ 12).

[18] (D.E. 22, Cert. of Lily Adams, at ¶ 17; D.E. 1, Compl., at ¶ 10).

[19] (D.E. 18-1, Cert. of Melinda Meyer, at ¶ 1).

[20] (D.E. 1, Compl., Ex. D).

[21] 28 U.S.C. § 636(b)(1)(A).

[22] L. Civ. R. 72.1(a)(1).

3

"clearly erroneous or contrary to law."[23] However, decisions whether to transfer are within "the sound discretion of the trial court."[24]

### III.  ANALYSIS AND DISCUSSION

Ms. Adams moves to transfer venue to the Eastern District of Louisiana pursuant to 28 U.S.C. § 1404(a), which provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[25] Because Section 1404(a) comes into play "where both the original and the requested venue are proper,"[26] the threshold question in determining the appropriateness of transferring a case under Section 1404(a) is whether the original venue is proper. Prudential brought this interpleader action pursuant to 28 U.S.C. § 1335.[27] Under 28 U.S.C. § 1397, "[a]ny civil action of interpleader or in the nature of interpleader under section 1335 of this title may be brought in the judicial district in which one or more of the claimants reside."[28] Because the Estate, a claimant, resides in New Jersey,[29] the District of New Jersey is a proper venue. Further, because Ms. Adams, a claimant, resides in Mandeville, Louisiana[30]—a city resting in the Eastern District

---

[23] 28 U.S.C. § 636(b)(1)(A).

[24] *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000).

[25] 28 U.S.C. § 1404(a).

[26] *Jumara v. State Farms Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995).

[27] (D.E. 1, Compl., at ¶ 4).

[28] 28 U.S.C. § 1397.

[29] (D.E. 1, Compl., Ex. A).

[30] (D.E. 1-4, Summons).

of Louisiana—this action "might have been brought" in that district. Accordingly, Section 1404(a) governs.

"The purpose of §1404(a) is to avoid the waste of time, energy and money and, in addition, to safe guard litigants, witnesses and the public against avoidable inconvenience and expense."[31] Transfer analysis under Section 1404 is flexible and individualized, with no rigid rule governing a court's determination.[32] The moving party bears the burden of proving a need for transfer and must show that the alternative venue is not only adequate, but also more convenient than the current one.[33] In applying Section 1404(a), courts consider both private and public interest factors.[34]

1. **Private Interest Factors**

Under *Jumara*, the private interest factors include the plaintiff's choice of forum; the defendant's forum preference; whether the claim arose elsewhere; the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; the convenience of the parties as indicated by their relative physical and financial condition; and the location of books and records.[35]

---

[31] *Rappoport v. Steven Spielberg, Inc.*, 16 F. Supp. 2d 481, 497 (D.N.J. 1998).

[32] *See Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 479 (D.N.J. 1993).

[33] *See, e.g.*, *LG Elecs. v. First Int'l Comput. Inc.*, 138 F. Supp. 2d 574, 586 (D.N.J. 2001); *Jumara v. State Farms Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Ricoh Co.,* 817 F. Supp. at 480.

[34] *Jumara*, 55 F.3d at 879–80.

[35] *Id*. at 879.

This Court finds that an analysis of the private interest factors weighs against transfer. Typically, a plaintiff's choice of forum is entitled to great weight.[36] However, deference to a plaintiff's choice of forum is not dispositive.[37] Some courts consider the plaintiff's choice presumption weaker in interpleader cases because the plaintiff has no interest in the merits of the action.[38] The Eastern District of Pennsylvania noted, "the presumption is inapplicable in an interpleader action if the party or parties that initiated the action are discharged prior to trial."[39] This Court must also consider defendants' preferences. Here, Prudential filed suit in the District of New Jersey. Ms. Adams requests to litigate in the Eastern District of Louisiana and the Estate prefers to remain in the District of New Jersey. Prudential has already been dismissed from this case and has no real interest in the outcome. Prudential's choice of forum carries no presumptive weight, and consideration of defendants' choice of forum generates a neutral outcome.

The third factor—where the claim arose—weighs slightly against transfer. The claim at issue here involves the disbursement of the Death Benefit claimed by both the Estate and Ms. Adams. Ms. Adams asserts that the claim arose in Louisiana where Mr. Adams purchased the Annuity and premiums were paid with community funds.[40] Although the Estate makes no argument as to this factor, Prudential asserts that the claim arose in New Jersey. Specifically,

---

[36] *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (citations omitted).

[37] *Id.*

[38] *See, e.g., Jackson Nat'l Life Ins. Co. v. Economou*, 557 F. Supp. 2d 216, 221 (D.N.H. 2008); *Wilmington Tr. Co. v. Gillespie,* 397 F. Supp. 1337, 1341 n.3 (D. Del. 1975); *Williams v. Lincoln Nat'l Life Ins. Co.*, 121 F. Supp. 3d 1025, 1035 (D. Or. 2015); *Mut. of Omaha Ins. Co. v. Dolby*, 531 F. Supp. 511, 514 (E.D. Pa. 1982).

[39] *Dolby*, 531 F. Supp. at 514.
[40] (D.E. 14-1, Def. Adams's Mot. Br., at 5).

Prudential explains that the Death Benefit only became due upon Mr. Adams's death, and at such time he domiciled in New Jersey.[41] Ms. Adams acknowledges that "death benefits did not exist until [Mr. Adams] passed away."[42]

The fourth and fifth factors also weigh against transfer. As to potential witnesses, Ms. Adams identifies "the broker who sold and managed the contract" and Mr. Adams's "former attorney, who drafted the [DRO]."[43] She explains that these witnesses are Louisiana residents and "will be unwilling and/or unable to travel to New Jersey; and without subpoena power, this Court cannot compel their attendance."[44] Ms. Adams does not provide any factual basis for the necessity of these witnesses, and the Estate contends that these witnesses are not necessary for adjudication. Interestingly, the Estate notes that any private communications between Mr. Adams and his attorney, whom Ms. Adams identifies as a potential witness, remain attorney-client privileged. This may make it difficult for the former attorney to "testify as to the negotiations and decisionmaking facts surrounding the Consent Judgment of Partial Partition of Community Property."[45] The Estate does not identify any witnesses.

As to the parties, Ms. Adams submits that she is unemployed, lives on Social Security retirement income, has no contacts with New Jersey, and would suffer great financial and physical hardship if she had to travel to New Jersey.[46] The Estate seeks to pursue the litigation in a cost-

---

[41] (D.E. 19, Pl.'s Opp'n and Cross-Mot., at 12).

[42] (D.E. 23, Def. Adams's Reply Br., at 7).

[43] (D.E. 14-1, Def. Adams's Mot. Br., at 5).

[44] (*Id.*).

[45] (*Id.* at 7).
[46] (*Id.* at 5).

effective manner for the benefit of the Estate, and asserts that remaining in New Jersey would aid in such a feat. Ms. Adams counters this contention by noting that the Estate is a party to court proceedings in Louisiana—including Mr. and Ms. Adams's divorce—and that in a United States Tax Court proceeding Mr. Adams agreed to designate New Orleans, Louisiana, as the place of trial.[47] Ms. Adams fails to explain how transferring this matter to Louisiana would be more cost effective, and how the Estate could "consolidate its legal resources in Louisiana,"[48] especially when the legal proceedings are separate and remain in different courts. Ms. Adams does not submit any evidence in support of her assertions that she would suffer great financial, physical, and emotional hardship by remaining in New Jersey.

Regarding factor six, although Ms. Adams argues that the books and records are located in Louisiana, Ms. Adams does not explain why it is more inconvenient for her to bring her books and records to New Jersey than it would be for the Estate to bring its books and records to Louisiana. The Estate asserts that its books and records are located in Mr. Adams's office in New Jersey.[49] There is no indication that Ms. Adams would be burdened by producing evidence, witnesses, or books and records in the District of New Jersey.

### 2. Public Interest Factors

Under *Jumara*, the public interest factors include the enforceability of the judgment; practical considerations making the trial easy, expeditious, or inexpensive; administrative difficulty in the two fora resulting from court congestion; local interest in deciding local

---

[47] (*Id.*; D.E. 22, Decl. of Lily S. Adams, at ¶ 14).

[48] (D.E. 23, Def. Adams's Reply Br., at 3).

[49] (D.E. 18-1, Cert. of Melinda Meyer, at ¶ 27).

controversies at home; public policies of the fora; and the trial judge's familiarity with the applicable law.[50]

The Court finds that an analysis of the public interest factors weighs against transfer. Factors one, three, and five—enforceability of the judgment, relative administrative difficulties, and the public policies of the fora, respectively—do not weigh in favor of or against transfer.

Ms. Adams does not provide a clear application of factor two—practical considerations that could make trial easy—yet, the Court, in considering this factor, notes that throughout her brief, Ms. Adams cites two judicial proceedings in Louisiana. The Court already addressed this argument above, but reiterates that litigation in this case occurs in federal district court while the Louisiana judicial proceedings occur in state court and federal tax court. A transfer would not advance practical considerations.

As to factor four—local interest in deciding controversies at home—both Ms. Adams and the Estate assert that each of their desired venues is "at home." The Death Benefit became due upon Mr. Adams's death, which occurred while he resided in New Jersey. Mr. Adams resided in New Jersey for six years.[51] New Jersey has an interest in adjudicating disputes concerning a New Jersey resident's testamentary intent. It is not dispositive that Mr. Adams purchased the Annuity while living in Louisiana. This factor weighs against transfer.

A majority of Ms. Adams's public interest argument concerns factor six—the trial judge's familiarity with applicable law. She asserts that "[b]ecause New Jersey is not a community property state, this matter should be transferred to Louisiana and heard by a court familiar with

---

[50] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995).

[51] (D.E. 18-1, Cert. of Melinda Meyer, at ¶ 16).

9

Louisiana's unique community property and life insurance laws,"[52] which she argues "control the rights to the Death Benefits."[53] Ms. Adams relies on the Estate's answer and cross-claim because the Estate argued the DRO waived Ms. Adams's interest in the remaining portion of the Annuity, and she further relies on the 2011 Consent Judgment. She asserts that in accordance with Louisiana law, the DRO did not waive her entitlement to the Death Benefit because death benefits are not realized until death and thus are not community property, which is the type of property she waived.[54] Again, Ms. Adams notes that there is the pending divorce and community property partition case in Louisiana state court, and that court entered the DRO.[55]

Although Ms. Adams relies on Louisiana law, the Estate relies on New Jersey law. At this time, it is unclear which law applies, and the parties fail to agree as to such. Although "familiarity of the forum court with the applicable law is a consideration, it is not enough that a court *might* have to apply another jurisdiction's law."[56] This court is routinely called upon to apply the laws of other jurisdictions. To the extent that Louisiana law may apply to the underlying dispute, this Court is confident in the District Judge's ability to interpret and apply it. The Court finds this factor does not weigh in favor of transfer.

---

[52] (D.E. 14-1, Def. Adams's Mot. Br., at 6).

[53] (*Id*. at 8).

[54] (D.E. 23, Def. Adams's Reply Br., at 7).

[55] (*Id*. at 8).

[56] *Calkins v. Dollarland, Inc.*, 117 F. Supp. 2d 421, 429 (D.N.J. 2000) (emphasis added).

## IV. CONCLUSION

For the foregoing reasons, this Court concludes that it is not in the interests of justice to transfer this case to the Eastern District of Louisiana, and **DENIES** Ms. Adams's motion to transfer. An appropriate order follows.

### ORDER

**IT IS** on this Tuesday, February 05, 2019,

**ORDERED**, that Defendant Ms. Adams's motion to transfer is **DENIED**.



Honorable Steve Mannion, U.S.M.J.
United States District Court,
for the District of New Jersey
phone: 973-645-3827

2/5/2019 5:10:44 PM

Original: Clerk of the Court
Hon. Madeline Cox Arleo, U.S.D.J.
cc: All parties
    File